UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT L. BOLDEN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:09-cv-312-WTL-WGH |
| ) | |
| HELEN J. MARBERRY, Warden, United ) | |
| States Penitentiary, Terre Haute, Indiana, et al., ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' motion for summary judgment.[1] The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the Defendants' motion to the extent and for the reasons set forth below.

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences

---

[1] The Defendants actually have moved to dismiss Bolden's complaint or, in the alternative, for summary judgment. Because all of the arguments in favor of dismissal apply equally to the summary judgment context–in other words, none of the claims would be subject to dismissal and not also subject to entry of summary judgment–the Court will treat the motion as simply a summary judgment motion.

in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## SUMMARY OF FACTUAL ALLEGATIONS[2]

Bolden was diagnosed with type 1 diabetes when he was two years old. In the more than forty years since his diagnosis, Bolden has been insulin dependent, requiring injections of insulin at least twice each day, approximately 30 minutes prior to his morning and evening meals. Management of his diabetes has also required him to check his blood sugar levels several times each day using a glucometer in order to ensure that he receives the proper dosage of insulin.

Consistent with the relevant standard of care, while incarcerated in various county jails in Missouri from October 2002 to September 2006 Bolden's blood sugar levels were monitored with glucometer tests throughout the day and he received injections of insulin either prior to or with his morning and evening meals. He was also provided with a diabetic diet.

In early October 2006, Bolden was transferred to the Special Confinement Unit at the Federal Correctional Complex in Terre Haute, Indiana ("FCC-TH"). Bolden alleges that he has not received appropriate care for his diabetes–and in particular proper monitoring of his blood

---

[2]This section contains only a general summary of the facts alleged by Bolden. More specific factual allegations regarding Bolden's medical care are set forth in the discussion section below.

sugar levels and proper dosage and administration of his insulin–since his arrival at FCC-TH. He also alleges that since he had all of his teeth pulled following his arrival at FCC-TH he has not received a soft diet that is appropriate for a diabetic and he has not been given a set of dentures that fit properly to enable him to chew. The lack of an appropriate diet has led to further difficulty in regulating his blood sugar.

## DISCUSSION

Bolden brings this case pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971), alleging that the medical and dental treatment he has received (or not received) at FCC-TH violates his rights under the eighth amendment. The Defendants have moved for summary judgment with regard to Bolden's claims against each of them. Their arguments are addressed, in turn, below.

### *Official Capacity Suits*

Bolden has sued the Defendants in both their individual and official capacities. The Defendants, citing *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987), argue that "[a]ny claim construed as stating a cause of action against a federal agency of the United States, or against officers of the government in their official capacities, is an action against the United States and is barred by sovereign immunity." *Del Raine* does not remotely stand for that proposition; nor is it a correct statement of law, inasmuch as Congress has waived sovereign immunity for some claims against the United States. *See* 5 U.S.C. § 702 (Administrative Procedures Act); 28 U.S.C. § 1346 (Federal Tort Claims Act). That said, however, the fact is that the United States–which includes an employee of the United States sued in his or her official capacity–is not a proper defendant in a *Bivens* action. *Kaba v. Stepp*, 458 F.3d 678, 687

3

(7th Cir. 2006) ("A Bivens action may not be brought against the United States or a federal agency."); *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005) ("[F]ederal prisoners suing under Bivens may sue relevant officials in their individual capacity only."); *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002) ("There is, however, a more fundamental problem: Bivens claims are brought against the relevant officials in their individual capacity, and Bunn's suit against the warden is plainly an official capacity action."). Therefore, while there may be an avenue by which Bolden could pursue injunctive relief against the appropriate prison official(s) in their official capacities (or the appropriate government agency), in this case–even in response to the instant motion–he has asserted only a *Bivens* action. Accordingly, the Defendants' motion for summary judgment is granted as to Bolden's *Bivens* claims against them in their official capacities.

## *Defendant Webster*

The crux of Bolden's allegations in this case is that the management of his diabetes has been so unacceptable that it constitutes a violation of his right, guaranteed by the eighth amendment, to be free from cruel and unusual punishment. Defendant Thomas Webster, M.D., is the physician who has been responsible for treating Bolden's diabetes during most of his incarceration at FCC-TH.[3] In order to prevail on his eighth amendment claim against Dr. Webster, Bolden must demonstrate that Dr. Webster displayed deliberate indifference to his serious medical needs. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). This claim has both

---

[3]In addition to his claims regarding the treatment he has received for his diabetes, Bolden raises claims regarding his diet and his dental care. Bolden has presented no evidence that Dr. Webster was involved in or had any authority over either of these aspects of his life at FCC-TH.

an objective and a subjective component. The objective component requires a showing that Bolden's medical condition was objectively serious; the Defendants concede that there is a question of fact with regard to this component. However, the Defendants, including Dr. Webster, argue that there is no question of material fact with regard to the second, subjective component, because there is no evidence that any of them had the requisite state of mind to support a finding of deliberate indifference.

As the Defendants correctly note, "[m]ere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citations omitted). Rather,

> [t]o satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind. . . . The officials must know of and disregard an excessive risk to inmate health; indeed they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. Additionally, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* (citations and internal quotation marks omitted). "Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate a medical condition." *Id.* (citations and internal quotation marks omitted). In other words, "[d]eliberate indifference can be established by inference from circumstantial evidence, including evidence that the risk was so obvious that a jury may reasonably infer actual knowledge on the part of the defendants." *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (citations omitted).

5

Bolden describes the medical care he initially received at FCC-TH as follows:[4]

> Upon my arrival at [FCC-TH], the nurses who brought my insulin to me refused to check my blood sugar before giving me my insulin shots because there was no order from a prison physician directing them to do this. They also told me I would not receive insulin before my meals because that was "not how we do things here" at Terre Haute. After the first of many hypoglycemic episodes in which I became incoherent (October 17, 2006), the dosage of my insulin was reduced without any consultation with, or examination of, me by a physician or physician's assistant. I could tell from pain in my legs that my blood sugar was running very high under the decreased dosage. I filed written requests in October and November of 2006 to see a doctor and to demand that my insulin dosage not be changed unless a doctor first consulted with me and examined me.
>
> In mid-November 2006, prison nurses began to bring me dosages of 32 and 36 units of insulin for the evening shots. This was a far larger dose of insulin than I had ever taken for my evening shot. I told the nurses I was afraid this large dosage would "put me on the floor." The nurse's only response was to say that I could squirt some of the dosage on the floor.
>
> I was not seen by an actual physician until Dr. Thomas Webster saw me briefly on or about February 26, 2007, almost six months after I arrived at the prison, and not within two weeks of my admission as BOP policy directs. Dr. Webster did not conduct any physical examination other than to check my blood pressure. I told him at that time that I had been trained for many years that close monitoring of my blood glucose level was critical to my health. Dr. Webster refused my request to have my blood sugar checked daily at each morning and evening meal because I was incarcerated at the Special Confinement Unit at [FCC-TH]. He said he would only order blood sugar tests to occur once a week. When I asked how he could tell how my blood sugar was acting the rest of the time, he responded "because I'm the doctor and you're the patient and I'm supernatural." Dr. Webster made no further examination or testing at that time. The chronological record of this first conversation Dr. Webster falsely reported that I declared at that time that I was having no problem with my diabetes.

---

[4]The Court notes that in their statement of undisputed facts the Defendants state that Bolden has been designated as a "Care Level II" inmate, which they said "identifies inmates who are *stable* outpatients with chronic illnesses that require at least quarterly clinical evaluations, and who are independent in activities of daily living." It is curious, then, that in the following paragraph the Defendants note that Bolden has been diagnosed with *unstable* type 1 diabetes and that he "has been seen numerous times by health care providers due primarily to *unstable and uncontrolled* diabetes." Defendants' Brief at 12 (emphasis added).

> . . .
>
> Dr. Webster did not order daily blood sugar tests until after I sent a request to an auditor for the American Correctional Association in June of 2007, requesting to speak with him through one of my public defenders.

Bolden Affidavit ¶¶ 5-7, 9 (dkt. no. 11, exh. 2). The medical records submitted by FCC-TH indicate that Bolden was seen by Dr. Webster on February 26, 2007, at which time Dr. Webster noted that Bolden was "argumentative, arguing about the frequency of his blood sugars. Wants blood sugars twice daily. Asked him to leave the exam room. He left shouting he would have his attorney contact me. I told him he would get FBS [presumably this stands for "fasting blood sugar"] 1X weekly X3 weeks and then see me." Webster Aff. Att. 9 (dkt. no. 28, exh. 2). It does not appear that Bolden saw Dr. Webster again until July 11, 2007; at that time they agreed that Bolden's blood sugar would be tested four times a day and that he would be administered insulin on a sliding scale depending on what the reading was. *Id.* at Att. 16.

Viewing the evidence of record in the light most favorable to Bolden, Dr. Webster was aware by no later than February 26, 2007, that Bolden was an unstable diabetic who had suffered from multiple hypoglycemic episodes since arriving at FCC-TH. Dr. Webster also was aware that Bolden's blood sugars were not being tested daily; indeed, he personally refused Bolden's request for twice daily blood tests.[5] The Court cannot say as a matter of law that this

---

[5]It is unclear why Bolden was not having his blood tested four times a day. His original medical intake form, dated October 3, 2006, appears to prescribe "[r]egular insulin sliding scale with Accuchecks AC&HS," which the Court believes means blood sugar tests before meals and at bedtime. There does not appear to be any change to that prescription in the records. However, on October 16, 2006, a medical record indicated that Bolden was seen and complained that he had "never received his hydrocholorothiazide for blood pressure nor blood tests for his diabetes" and on October 18, 2006, there was an order "for the patient to get achucheck [sic.] twice in next week," which certainly suggests that he was not otherwise receiving blood sugar tests on a regular basis. A note on February 12, 2007, indicates that

decision by Dr. Webster was not "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment" and instead constituted deliberate indifference to Bolden's medical needs. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

This conclusion is supported by the Defendants' own arguments.[6] The Defendants characterize this case as involving "an inmate's disagreement with the choice of medical treatment," which, they correctly note, does not rise to the level of a constitutional violation. They argue that "[i]n light of the extensive record of treatment here, including the facts that Bolden is seen by a care provider in connection with his blood sugar level being tested four times a day and the extensive record of medical treatment set out in Dr. Webster's declaration, the Court cannot find that the Defendants were deliberately indifferent." Defendants' Brief at 36; *see also id.* at 37 ("The Defendants took entirely appropriate action concerning treatment of Bolden's diabetes, as shown by the extensive record. See Webster's Declaration generally; Rupksa ¶ 7-9 (staff check blood sugar levels four times a day and can respond to either high or low readings)"). They further assert:

> Bolden himself repeatedly admits that he has received substantial medical care. He admits that Dr. Webster authorized glucometer tests four times a day. Complaint ¶ 28. He admits receiving insulin. *Id.*, ¶ 42. He admits receiving a dietary consultation from a dietician. *Id.*, ¶ 41. He admits receiving A1C tests. Declaration Under Penalty of Perjury of Robert L. Bolden, Sr., ("Bolden Decl.")

---

Bolden requested "more accuchecks"; it appears that this request is what led to his appointment with Dr. Webster, who refused his request for twice daily blood sugar tests.

[6]The Defendants point out in their reply brief that while Bolden relies upon the report of his medical expert, that report is not supported by an authenticating affidavit. Even without considering Bolden's expert report, however, the record contains sufficient evidence from the Defendants themselves regarding the applicable standard of care.

> ¶ 15, Exh. 1 to Plaintiff's Brief in Support of Motion for Preliminary Injunction ("Plf's PI Motion"). He also admits that he is receiving "insulin injections on a sliding scale, based on glucometer readings of 'his' blood sugar." Bolden Decl. ¶ 15. He admits that he was referred to a kidney specialist in January 2009. *Id.*, Decl. ¶ 22. Bolden further admits that he received a glucometer. *Id.*, ¶ 27.

Defendants' Brief at 37. The Defendants wholly fail to acknowledge that this "conventional regimen" was not instituted until almost nine months after Bolden arrived at FCC-TH and that Bolden's repeated requests for precisely this type of treatment–and specifically more frequent blood sugar tests–were ignored up until that time, and were specifically rejected by Dr. Webster. The Defendants make no attempt to explain this decision or demonstrate that the delay in instituting the conventional treatment was based on Dr. Webster's medical judgment.

Based upon the facts viewed in the light most favorable to Bolden, a reasonable jury could conclude that the manner in which Dr. Webster treated Bolden's diabetes prior to July 7, 2007, was so inconsistent with accepted medical standards that it could not have been based on his medical judgment and was, instead, a result of Dr. Webster's deliberate indifference to Bolden's medical needs. Therefore, Dr. Webster is not entitled to summary judgment on Bolden's claim as it relates to the care he received for his diabetes prior to that date.[7] With

---

[7]Neither is Dr. Webster entitled to qualified immunity with regard to this aspect of Bolden's claim. Inasmuch as an inmate's constitutional right to adequate medical care has long been recognized,

> a plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendant's subjective intent to harm or deliberate indifference. If there are genuine issues of fact concerning those elements, a defendant may not avoid trial on the grounds of qualified immunity.

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citation omitted).

regard to Dr. Webster's management of Bolden's diabetes[8] and other medical conditions[9] after that date, the Court determines that Bolden has not presented evidence from which a finding of deliberate indifference could be made; accordingly, Dr. Webster is entitled to summary judgment with regard to that aspect of Bolden's claim.[10]

### *Defendant Shepherd*

In addition to his allegation that the treatment he has received for his diabetes has been constitutionally inadequate, Bolden alleges that the same is true with regard to the dental treatment he has received. Specifically, he alleges that he experienced a great deal of pain from dental issues that were not treated in a timely manner, that he finally asked for all of his remaining teeth to be pulled to alleviate his pain, that he then waited an unreasonable amount of

---

[8] Bolden alleges generally that his diabetes has been poorly controlled and as a result he has suffered from numerous hypoglycemic episodes, but he has not produced any evidence from which a reasonable juror could conclude that the care he has received from Dr. Webster since July 7, 2007, was so far below the standard of care that an inference of deliberate indifference could be drawn.

[9] For example, Bolden complains that Dr. Webster did not follow up with him after he was evaluated by a nephrologist who diagnosed him with stage IV chronic kidney disease secondary to diabetic and hypertensive nephropathy. However, the nephrologist specifically stated that he agreed with the "current management" of Bolden's condition; therefore, it does not appear that any response by Dr. Webster to the report was necessary.

[10] The Defendants make much of the fact that Bolden has received a great deal of medical care while at FCC-TH, noting that he was "seen and/or evaluated by medical staff approximately 63 times for a variety of complaints between October 11, 2006, and October 25, 2009" and arguing that the Court should "examine the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs." Defendants' Brief at 35 (citing *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000)). Presumably the Defendants are not suggesting that the fact that Bolden has been treated for many ailments–including his numerous episodes of hypoglycemia–renders irrelevant the fact that (viewing the facts in the light most favorable to Bolden) Dr. Webster failed for many months (at great risk to Bolden's current and future health) to institute an appropriate treatment plan for his diabetes.

time to receive dentures, and that once he did receive them they did not fit. Defendant R.D. Shepherd is the dentist who is responsible for Bolden's dental care at FCC-TH. Bolden concedes in his response to the instant motion that Dr. Shepherd is entitled to absolute immunity as an officer of the Public Health Service. *See* 42 U.S.C. § 233(a). Accordingly, the motion for summary judgment is **GRANTED** as to Dr. Shepherd.

*Remaining Defendants*

In addition to his physician and dentist, Bolden has named the following defendants: Helen Marberry, the current warden of FCC-TH; R.V. Veach, the former warden of FCC-TH; David Young, the associate warden of FCC-TH; and Julie Beighley, FCC-TH's health services administrator (hereinafter referred to as "the non-medical Defendants"). The non-medical Defendants argue that they cannot be liable to Bolden for any constitutional violation arising out of the quality of his medical or dental treatment because they had no personal involvement in Bolden's treatment. "In order to state a cause of action under *Bivens*, the plaintiff must allege facts which show that the individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights." *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997). "[A]n official meets the 'personal involvement' requirement when she acts or fails to act 'with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.'" *Id.* (quoting *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994)). With regard to medical care, a jail officer is entitled to defer to the judgment of a medical professional with regard to the appropriate way to treat an inmate. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

> If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This

> follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Id.* at 1011 n.9 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)).

Each of the non-medical Defendants has submitted an affidavit that supports his or her assertion that he or she had no personal involvement in Bolden's medical or dental care such that he or she could be held liable for any constitutional violation relating thereto. *See, e.g.,* Marberry Declaration at ¶ 5 ("I do not personally investigate Bolden's complaints. Instead, I relied on information which was provided to me."); Veach Declaration at ¶ 3 ("I did not personally investigate the Plaintiff's complaints. Instead, I relied upon information which was provided to me."); Young Declaration at ¶ 5, 6 ("I did not provide medical treatment or deny medical treatment. These types of decisions are delegated to the medical providers within the Health Services Department. . . . I am not aware of any complaints made by the Plaintiff which have not been addressed."); Beighly Declaration at ¶ 3 ("I do not provide treatment. I do not approve or deny medical or dental treatment. I have responded to cop-outs and Administrative Remedies with information located in his medical record which is medical documentation by his treating physicians. To my knowledge all of Plaintiff's requests to me were responded to in a timely manner. When his attorney has contacted me, again, I responded timely and with information provided to me by his medical care providers.").

In response, Bolden argues that his "pleadings set out the close personal involvement of

each of these defendants in the medical care provided and denied Bolden." Bolden Brief at 19.

He then argues:

> Warden Marberry is personally responsible for the medical care and treatment of
> Bolden, and rejected complaints by Bolden, as well as by the attorneys
> representing him in his criminal case, when they inquired about the denial of
> proper medical and dental care. [Complaint, ¶ 6.] The same was true of
> Defendant Veach while he was Warden at [FCC-TH]. [*Id.* at 5, ¶ 8.] Defendant
> Young was the associate warden who personally oversaw Health Care Services
> at [FCC-TH], and frequently inquired about Bolden's medical and dental needs
> as part of his regular work. [Complaint, ¶ 7]. . . . Defendant Beighley was (and
> is) extensively involved in the medical care Bolden received, as Health Services
> Administrator, and instructed Bolden's criminal defense attorneys to contact her
> directly with concerns about his diabetic care and dental care. Ms. Beighley
> authored many of the responses to Bolden's grievances concerning lack of proper
> care for his diabetes. Wardens' [sic] Marberry and Veach likewise specifically
> investigated, reviewed, and made decisions concerning the care the prison would
> provide and deny plaintiff. All of these defendants were personally involved in
> the medical care and denial of medical care that form the basis of Bolden's
> Complaint. [Complaint, ¶ 10].

*Id.* at 19-20. Unfortunately for Bolden, successfully avoiding summary judgment requires evidence, and he cites to no evidence in support of his argument that there is a basis to hold the non-medical Defendants liable. *See Tibbs v. City of Chicago*, 469 F.3d 661, 663 at n.2 (7th Cir. 2006) ("[M]ere allegations of a complaint are not evidence.").[11] As courts have often admonished, "summary judgment is the 'put up or shut up' moment in the life of a case," *see, e.g., In re Airadigm Communications, Inc.*, 616 F.3d 642, 657 (7th Cir. 2010), and while it is not

---

[11]The Court notes that Bolden also submitted an affidavit along with his response to the instant motion that contains several paragraphs asserting that various defendants were "named a defendant because of his [or her] involvement in, and his approval and encouragement of the course of dangerous medical care and deliberate indifference set out in the Complaint and request for injunctive relief, including his responses to Bolden's administrative appeals and his direct responses, whereby he has denied Bolden necessary medical and dental treatment." Bolden Declaration (dkt. no. 57, exh. 1). These conclusory assertions fall far short of creating an issue of fact regarding any of the non-medical Defendants' personal involvement in Bolden's medical or dental care.

entirely impossible that Bolden might have made a case against some or all of the non-medical Defendants,[12] it is neither required nor appropriate for the Court to "sift through the record and make [Bolden's] case for him." *See United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). Accordingly, the non-medical Defendants are entitled to summary judgment on the claims against them in their individual capacities. This ruling dooms Bolden's claims with regard to his dental care and dentures, inasmuch as he has failed to identify any Defendant (other than Dr. Shepherd, who is immune from suit) who was personally involved in any of the decisions made or actions taken regarding those issues. The same is true with regard to Bolden's claim that he has not received an appropriate diabetic diet.[13]

---

[12]One of the Defendants' arguments merits a brief mention. The Defendants cite *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007), for the proposition that "Defendants cannot be found liable merely because they were involved in the administrative remedy process." To the extent that the Defendants suggest that a defendant who did nothing more than deny an administrative claim can never be liable in a *Bivens* action, that is incorrect. *George* stands for the proposition that an official cannot be liable for denying an administrative claim regarding a "completed act of misconduct" because that official did not "cause or contribute to" the misconduct. An official who receives an administrative claim regarding an *ongoing* violation and turns a blind eye to it could be liable, however. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("[N]onmedical officials can be chargeable with the Eighth Amendment scienter requirement of deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.") (citations and internal quotation marks omitted). Bolden essentially argues that this is such a case, but fails to point to any evidence to support that argument.

[13]This is not to suggest that Bolden has otherwise satisfied his burden with regard to these claims; the Court need not, and therefore does not, address that issue. Nor is it necessary for the Court to address the Defendants' claim that Bolden failed to exhaust his administrative remedies with regard to his claim that his dentures do not fit properly.

## CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment is **GRANTED** in its entirety, with one exception; it is **DENIED** with regard to Bolden's claim against Dr. Webster in his individual capacity with regard to his treatment of Bolden's diabetes prior to July 11, 2007. The Court requests that Magistrate Judge Hussman schedule a status conference with counsel at his earliest convenience to address the possibility of settlement and to ensure that all parties are aware of the pre-trial preparation deadlines set forth in Part VIII of the case management plan in this case. This case remains set for a final pretrial conference on June 16, 2011, and trial on July 18, 2011.

SO ORDERED: 03/21/2011

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification